## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

MICHAEL D. STONE                                                    PLAINTIFF

V.                              NO. 4:17CV00335 BSM-JTR

NANCY A. BERRYHILL,
**Acting Commissioner,**
**Social Security Administration**                                 DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction:

Plaintiff, Michael D. Stone, applied for disability benefits on January 31, 2014, alleging a disability onset date of January 30, 2013. (Tr. at 75). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 84). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner. Stone has requested judicial

review.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II.   The Commissioner's Decision:

The ALJ found that Stone had not engaged in substantial gainful activity since the alleged onset date of January 30, 2013. (Tr. at 77). At Step Two, the ALJ found that Stone has the following severe impairment: intellectual disability. (Tr. at 78).

After finding that Stone's impairment did not meet or equal a listed impairment (Tr. at 79), the ALJ determined that Stone had the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, except that he would be limited to simple, routine, and repetitive tasks in a setting where interpersonal contact is incidental to the work performed. (Tr. at 80). Additionally, he would be limited to work where the supervision is simple, direct, and concrete. *Id.*

Based on Stone's age, education, work experience, and RFC, the ALJ found that Stone was capable of performing past relevant work as a laborer. (Tr. at 83). Consequently, the ALJ found that Stone was not disabled. (Tr. at 84).

## III.   Discussion:

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.    Stone's Arguments on Appeal

Stone contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) the ALJ failed to fully develop the record; (2) the ALJ erred in finding that Stone did not meet Listing 12.05; (3) the ALJ did not

conduct a proper credibility analysis; and (4) the RFC did not fully incorporate Stone's limitations. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Stone did not submit many records pertaining to the relevant time-period. The ALJ reviewed eye clinic records, which showed 20/25 vision in the right eye and 20/20 vision in the left eye, with a full visual field. (Tr. at 537). Stone's eye doctor prescribed glasses and follow-up as needed. *Id.* The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

At an April 6, 2015 doctor's appointment, Stone complained of back pain, but denied joint stiffness, muscle aches, painful joints, or weakness in his extremities. (Tr. at 549). An x-ray of Stone's cervical spine showed mild degenerative changes, and another x-ray of the lumbar spine was unremarkable. (Tr. at 532).

A physical consultative examination revealed positive straight-leg raise bilaterally, but no muscle spasm, weakness, or atrophy. (Tr. at 530). Stone could stand and walk without assistive devices, could walk on his heels and toes, and could squat or rise from a squatting position. *Id.* Range of motion for all extremities was within normal limits. (Tr. at 529). The medical examiner assigned no physical limitations. (Tr. at 531).

4

A mental diagnostic exam likewise revealed mild limitations. Stone's full scale IQ was 65, and the examiner, Steve Shry, Ph.D., placed Stone in the mildly intellectually disabled range. (Tr. at 524). Dr. Shry found Stone did not demonstrate difficulty in communicating or interacting with others, he was capable of comprehending and carrying out basic tasks, and he could sustain concentration to tasks. (Tr. at 525). He was not impaired in his ability to complete simple tasks within an acceptable time-frame. *Id.* This opinion dovetailed with the opinion of the non-examining psychiatric consultant, who found mild to moderate limitations in carrying out work-like tasks. (Tr. at 207). The ALJ formulated an RFC incorporating both of those opinions, and limited Stone to simple work with direct supervision.

Stone submitted records from after the relevant time-period showing treatment for back pain. (Tr. at 8-48). He received epidural injections and a medial branch block. *Id.* On October 3, 2016, Stone showed full strength in upper and lower extremities, and denied joint stiffness or swelling, arm or leg weakness, or muscle tenderness. (Tr. at 21-24). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Straight-leg raise was negative on October 18, 2016. (Tr. at 17). These records did not relate to the period before the date of the ALJ's decision, and nevertheless, did not reveal significant impairment or aggressive treatment. *See Box v. Shalala*, 52 F.3d 168, 171

(8th Cir. 1995).

Stone first argues that the ALJ did not fully develop the record. He claims that the ALJ should have ordered additional consultative examinations based on an incomplete medical record. He cites to the fact that there were only 31 pages of medical records. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). The scant records provided by Stone do not indicate the ALJ should have scheduled further examinations. The ALJ had two thorough state-agency consultant opinions, and Stone's failure to present records contradicting those opinions does not equate to a failure by the ALJ. The ALJ was not required to make Stone's case for him, or to go on a fishing expedition for records he had no reason to believe existed. The ALJ's decision was based on a fully developed record.

Stone's argument that he met Listing 12.05C also fails. At Step Three, the

burden rests squarely on the claimant to show he meets a Listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). In order to meet the requirements of Listing 12.05C, Stone would have to show: significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age 22; a valid verbal, performance, or full-scale IQ of 60 through 70; and a physical or other impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.05. While Stone did have an IQ score in the required range, he did not demonstrate another impairment that posed additional work-related limitations. Objective testing was mild at the most, clinical exams were grossly normal, and treatment was conservative. Medical experts found virtually no limitations, save the restriction to simple work. Stone did not meet his burden at Step Three with respect to Listing 12.05C.

Stone next argues that the ALJ's credibility analysis was flawed. He avers that the ALJ did not fully examine the *Polaski* factors. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984). Prior to March 28, 2016, an ALJ was required to discuss the *Polaski* factors to come to a determination on credibility.[1] But the Administration rescinded the ruling that required a *Polaski* analysis:

---

[1] The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Id.*

> SSR 16-3p, 2016 SSR LEXIS 4 rescinded a previous Social
> Security Ruling that concerned the credibility of a claimant.
> SSR 16-3p, 2016 SSR LEXIS 4, 82 Fed. Reg. 49,462, 49,463
> (Oct. 25, 2017). SSR 16-3p, 2016 SSR LEXIS 4 removed the
> use of the term "credibility" from its sub-regulatory policy
> because the Social Security Administration's (SSA)
> regulations did not use the term. *Id*. SSR 16-3p, 2016 SSR
> LEXIS 4 clarified that "subjective symptom evaluation is not
> an examination of an individual's character" and that a two-
> step evaluation process must be used. *Id*. Step One is to
> determine whether the individual has a medically determinable
> impairment that could reasonably be expected to produce the
> alleged symptoms. *Id*. at 49,463-64. Step Two is to evaluate
> the intensity and persistence of an individual's symptoms, such
> as pain, and determine the extent to which an individual's
> symptoms limit her ability to perform work-related activities.
> *Id*. at 49,464-66.

*Contreras-Zambrano v. SSA*, 2018 U.S. App. LEXIS 2531 *7 (11th Cir. January 30, 2018). Now, "the determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent, and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 SSR LEXIS 4; *Palmer v. Colvin*, 2017 U.S. Dist. LEXIS 41 *22 (W.D. Mo. Jan 3, 2017).

The ALJ in this case cited verbatim the language required by the new regulation. (Tr. at 81). The new regulation requires a review of the record as a whole, and *Polaski* factors do offer guidance. *See Palmer* at *23. The ALJ discussed Stone's

work history, his relative academic success in high school, his grossly normal clinical examinations, and his ability to engage in a variety of daily activities. Stone could make simple meals, engage in housework, mow the lawn, make household repairs, and drive. (Tr. at 81-83, 416-420). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ properly considered and discussed the factors related to symptoms and their effect on work function.

Finally, Stone argues that the RFC did not incorporate all of his limitations. As explained above, the medical findings were mild and his treatment was conservative. His daily activities do not suggest total disability. The ALJ properly evaluated the record, including opinion evidence, to formulate an RFC that captured all of Stone's limitations.

## V.  **Conclusion**:

There is substantial evidence to support the Commissioner's decision that Stone was not disabled. The record was fully developed, the ALJ made a proper Listings finding, he fulfilled his duty to evaluate subjective complaints, and the RFC incorporated all of Stone's limitations.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 2nd day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE